IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Keith Dedrick**<br>3728 Wolburn Avenue<br>Cleveland, Ohio 44109<br><br>        Plaintiff,<br><br>– vs –<br><br>**Cuyahoga County, Ohio**<br>2073 East Ninth Street<br>Cleveland, Ohio 44115<br><br>    and<br><br>**Clifford Pinkney**, Sheriff of<br> Cuyahoga County, Ohio<br>1215 West Third Street<br>Cleveland, Ohio 44113<br><br>    and<br><br>**Ken Mills**, Regional Director of<br> Corrections, Cuyahoga County<br> Sheriff's Department<br>1215 West Third Street<br>Cleveland, Ohio 44113<br><br>    and<br><br>**The MetroHealth System**, a County<br> Hospital System Organized Under the<br> Laws of the State of Ohio<br>2500 MetroHealth Drive<br>Cleveland, Ohio 44109<br><br>    and | Case Number:<br><br>Judge:<br><br>Magistrate Judge<br><br><br><br>Complaint Under 42 U.S.C § 1983 for<br>Compensatory and Punitive Damages,<br>Attorney Fees, Costs of Suit & Other Relief<br><br><br><br>Jury Demand Endorsed Hereon |

**Journette Patterson**
Corrections Officer, Cuyahoga
  County Corrections Center
1215 West Third Street
Cleveland, Ohio 44113

and

**Dr. Thomas Tallman**
The MetroHealth System
2500 MetroHealth Drive
Cleveland, Ohio 44109

and

**Marcus Harris, R.N.**
Director of Nursing, Cuyahoga
  County Corrections Center
1215 West Third Street
Cleveland, Ohio 44113

and

**Chandra Zittello, R.N.**
Jail Nurse, Care of
The MetroHealth System
2500 MetroHealth Drive
Cleveland, Ohio 44109

and

**Janet Hodgson, L.P.N.**
Jail Nurse, Cuyahoga
  County Corrections Center
1215 West Third Street
Cleveland, Ohio 44113

and

**Brenda Haney, R.N.**
Jail Nurse, Care of
The MetroHealth System
2500 MetroHealth Drive
Cleveland, Ohio 44109

and

**Josephine Spisak, R.N.**
Jail Nurse, Care of
The MetroHealth System
2500 MetroHealth Drive
Cleveland, Ohio 44109

    and

**John Yousef, C.N.P.**
Jail Certified Nurse Practitioner
The MetroHealth System
2500 MetroHealth Drive
Cleveland, Ohio 44109

    and

**John or Jane Doe Defendants 1-5**
Unknown Specific Policy Makers
Care of Cuyahoga County
2073 East Ninth Street
Cleveland, Ohio 44115

    and

**John or Jane Doe Defendants 6-10**
Unknown Specific Corrections Officers at
  Cuyahoga County Corrections Center
1215 West Third Street
Cleveland, Ohio 44113

    and

**John or Jane Doe Defendants 11-15**
Unknown Specific Medical Personnel at
  Cuyahoga County Corrections Center
1215 West Third Street
Cleveland, Ohio 44113

    and

**John or Jane Doe Defendants 16-20**
Unknown Specific Administrators at
  Cuyahoga County Corrections Center
1215 West Third Street
Cleveland, Ohio 44113

    Defendants.

## – INTRODUCTION –

1. This civil rights action seeks money damages, attorney fees, costs and other relief based upon the violation, by the Defendants, of the Eighth and Fourteenth Amendment rights of the Plaintiff, **Keith Dedrick** ("Dedrick").

2. In May 2016, Dedrick was an inmate in the Cuyahoga County Corrections Center, serving a term of incarceration in connection with various drug related offenses, after having been found to have violated his probation. At the time he was taken into custody, Dedrick had been using and abusing the prescription drug Xanax, generically known as Alprazolam, which is a benzodiazepine widely known to be addictive and widely known to cause severe and life threatening withdrawal symptoms when its use is discontinued suddenly. Despite having identified Dedrick, upon booking, as an abuser of Xanax, and despite being aware of the potential severe and life threatening effects of Xanax withdrawal, and despite having been aware of the symptoms of such withdrawal, and despite having observed Dedrick manifest such symptoms, and despite being actually aware that Dedrick was suffering from Xanax withdrawal, and despite knowing that without proper medical treatment, that withdrawal posed a substantial risk of serious medical harm, including the possibility of death, to Dedrick, and despite having the ability to provide Dedrick with appropriate treatment to ameliorate or avoid those risks, certain of the Defendants, who are specified herein, deliberately chose not to provide Dedrick with appropriate treatment for his benzodiazepine withdrawal.

3. This deliberate indifference to the medical needs of Dedrick was caused both by the deliberate indifference of those Defendants who opted not to treat him, and by the actions and culpable inactions of other Defendants, specified herein, who as policymakers failed to adopt, maintain and enforce adequate policies, procedures, training and supervision regarding the risks of benzodiazepine withdrawal in the Cuyahoga County Corrections Center ("CCCC").

4. This failure to adopt, maintain and enforce adequate policies, procedures, training and supervision was conscious, and taken despite the substantial certainty that it would result in the deprivation of constitutionally mandated medical care to inmates in the CCCC.

5. Both the failure of certain Defendants to provide adequate and appropriate medical treatment to Dedrick for benzodiazepine withdrawal, and the failure to adopt, maintain and enforce policies, procedures, training and supervision that would ensure such treatment was provided to inmates when needed, constituted deliberate indifference to the serious medical needs of Dedrick, despite a substantial likelihood of serious medical harm, in violations of rights secured to him by the Eighth and Fourteenth Amendments to the United States Constitution.

6. As a direct and proximate cause of the culpable actions and inactions summarized above, Dedrick suffered severe effects from his untreated withdrawal benzodiazepines, which resulted in his sustaining serious and permanent injuries while in custody, including trauma, brain damage, and significant and persistent cognitive and neurological injuries, as well as pain, suffering, emotional distress, loss of enjoyment of life and other suffering.

– JURISDICTION & VENUE –

7. This Court has subject matter jurisdiction over this action, in that the claims herein pursuant to 28 U.S.C § 1331, in that the claims herein arise under the Constitution and laws of the United States, under 28 U.S.C § 1343(a) and 42 U.S.C. § 1983, which provide, irrespectively, a private right of action for such claims and vest the District Court of the United States with jurisdiction to hear such actions, and pursuant to 42 U.S.C § 1988, which authorizes the award of attorney fees and costs in such actions.

8. Venue is the Court is proper in pursuant to 28 U.S.C § 1391 (B)(1) and (2), and under Local Rule 3.8 (a), in that all the Defendants reside within, and all the facts giving rise to this action transpired within the Northern District of Ohio, Eastern Division, in Cuyahoga County.

– PARTIES –

9. **Dedrick** is, and at all times relevant hereto was a natural person and a citizen of the State of Ohio, residing in the City of Cleveland, Cuyahoga County, Ohio. During the period in which the events giving rise to this action occurred, Dedrick was an inmate in custody of the Cuyahoga County Sheriff and CCCC.

10. Defendant Cuyahoga County ("**the County**") is a political subdivision of the State of Ohio, which is organized and maintained under Section 3.02 of the Ohio Revised Code, a body corporate and politic, and a "person" within the meaning of 42 U.S.C § 1983. The County, at all times relevant hereto, pursuant to Section 5.08 of its own Charter and by and through its Council, appointed, supervised and maintained in office Defendant Sherriff Clifford Pinkney.

11. Defendant Clifford Pinkney ("**the Sheriff**") is and at all times was a natural person, with his residence and principal place of business within Cuyahoga County, and the Sherriff of Cuyahoga County, appointed pursuant to Section 5.08 of its Charter and both empowered and required under that Section, and Sections 311.01 and 341.01 of the Ohio Revised Code to operate the county jail, which in this case is the CCCC. He is the principal officer of the Cuyahoga County Sherriff's Department ("**CCSD**"). He is sued here in both his individual and official capacities for damages and the other relief being sought.

12. Defendant Ken Mills ("**Mills**"), is and at all times relevant hereto was a natural person with his residence or principal place of business within Cuyahoga County, the Regional Director of Corrections, who is the principal member of the CCSD charged with the management, operation and supervision of jails operated by the County, including the CCCC. He is sued here in both his individual and official capacities for damages and the other relief being sought.

13. Defendant Thomas Tallman, M.D. ("**Tallman**") is and at all times relevant hereto was a natural person with his residence or principal place of business within Cuyahoga County, a

physician with privileges at MetroHealth Medical Center, and the Director of the MetroHealth Corrections Medical Program, in which capacity he is charged, among others, with the creation, implementation, execution and supervision of medical policies within the CCCC, and with the care and treatment of inmates therein. He is sued here in both his individual and official capacities for damages and the other relief being sought.

14. The MetroHealth System ("**MetroHealth**") is a public hospital operated and governed by a Board of Directors appointed by the County, is both an agency and instrumentality of the County, and charged with the performance of a traditional county function, and a state actor. It is both a body corporate and politic and a "person" within the meaning of 42 U.S.C § 1983. Since 2013, and at all times relevant hereto, MetroHealth has contracted with the County and the Sheriff to provide medical care to inmates in the CCCC, through the placement of care providers within the CCCC itself, the provision of emergency medical services, and by treating inmates at its West 25th Street campus.

15. Defendant Marcus Harris, R.N. ("**Harris**") is and at all times relevant a natural person with his principal place of business in Cuyahoga County, and Director of Nursing at CCCC, in which capacity he is charged with formulating and implanting jail medical policy, and with training, supervising, hiring, discipline and assessment of jail nursing staff. He is sued here in his official capacity for purposes of obtaining the relief sought herein.

16. Defendant Chandra Zittello, R.N. ("**Zittello**) is and at all times relevant was a natural person with her principal place of business in Cuyahoga County, and a registered nurse employed by MetroHealth and/or the County, inter alia, to provide medical care to inmates in the CCCC. She is sued here in her official capacity for purposes of obtaining the relief sought herein.

17. Defendant Brenda Haney, R.N. ("**Haney**") is and at all times relevant was a natural person with her principal place of business in Cuyahoga County, and a registered nurse employed

by MetroHealth and/or the County, inter alia, to provide medical care to inmates in the CCCC. She is sued here in her official capacity for purposes of obtaining the relief sought herein.

18. Defendant Josephine Spisak, R.N. ("**Spisak**") is and at all times relevant was a natural person with her principal place of business in Cuyahoga County, and a registered nurse employed by MetroHealth and/or the County, inter alia, to provide medical care to inmates in the CCCC. She is sued here in her official capacity for purposes of obtaining the relief sought herein.

19. Defendant Janet Hodgeson, L.P.N. ("**Hodgeson**") is and at all times relevant was a natural person with her principal place of business in Cuyahoga County, and a licensed practical nurse employed by MetroHealth and/or the County, inter alia, to provide medical care to inmates in the CCCC. She is sued here in her official capacity for purposes of obtaining the relief sought herein.

20. Defendant John Yousef, C.N.P.. ("**Yousef**) is and at all times relevant was a natural person with his principal place of business in Cuyahoga County, and a certified nurse practitioner employed by MetroHealth, inter alia, to provide medical care to inmates in the CCCC. He is sued here in his official capacity for purposes of obtaining the relief sought herein.

21. Defendant Journette Patterson ("**Patterson**) is and at all times relevant was a natural person with her principal place of business in Cuyahoga County, and a corrections officer, charged with the oversight, supervision and care of inmates in the CCCC. She is sued here in her official capacity for purposes of obtaining the relief sought herein.

22. Defendants John or Jane Doe 1 through 5 ("**the Doe Policy Defendants**") are, and at all times relevant were, natural persons whose identities are unknown to Dedrick but may be obtained through the exercise of discovery, who were charged with the formulation, implementation and supervision of corrections and medical policy in the CCCC. Each is sued here in his or her respective official capacities for purposes of obtaining the relief sought herein.

23. Defendants John or Jane Doe 6 through 10 ("**the Doe Corrections Defendants**") are, and at all times relevant were, natural persons whose identities are unknown to Dedrick but may be obtained through the exercise of discovery, who were corrections officers, charged with the oversight, supervision and care of inmates in the CCCC. Each is sued here in his or her respective official capacities for purposes of obtaining the relief sought herein.

24. Defendants John or Jane Doe 11 through 15 ("**the Doe Medical Defendants**") are, and at all times relevant were, natural persons whose identities are unknown to Dedrick but may be obtained through the exercise of discovery, who were health care providers charged with providing diagnoses and care to inmates in the CCCC. Each is sued here in his or her respective official capacities for purposes of obtaining the relief sought herein.

25. Defendants John or Jane Doe 15 through 20 ("**the Doe Staff Defendants**") are, and at all times relevant were, natural persons whose identities are unknown to Dedrick but may be obtained through the exercise of discovery, who were staff members, charged with the oversight, supervision and care of inmates in the CCCC. Each is sued here in his or her respective official capacities for purposes of obtaining the relief sought herein.

26. The Defendants, and each of them, were at all times relevant hereto, with respect to the allegations herein, acting under color and authority of state law.

27. The actions, culpable inactions, and omissions of the Defendants, and each of them, at all times relevant hereto, with respect to the allegations herein, were taken in accordance with, or constituted, the policies, practices, customs and usages of the County and the Sheriff.

28. For purposes of notational convenience only, and without assigning legal significance to the designations, certain groups of Defendants may be hereinafter referred to collectively, as follows.

    a. The County, the Sheriff, Mills, Tallman, Harris and Does 1-5, collectively may be referred to as the **Policy Defendants**.

 b. The County and MetroHealth may be referred to, collectively, as the **Entity Defendants**.

 c. Mills, Patterson and Does 6-10, collectively may be referred to as the **Corrections Defendants**.

 d. Harris, Zittello, Hodgson, Haney, Spisak, Yousef and Does 11-15, collectively, may be referred to as the **Nursing Defendants**.

 e. MetroHealth, Tallman and the Nursing Defendants may be referred to, collectively, as the **Medical Defendants**.

 f. The Sherriff, Mills and Does 16-20 may be referred to, collectively, as the **Administrative Defendants**.

– FACTS –

29. Dedrick restates as if fully rewritten here each relevant allegation, assertion and averment set forth in Paragraphs 1 through 28 of this Complaint, above.

30. Dedrick was convicted of various drug offenses in the Cuyahoga County Court of Common Pleas in August 2014 and was sentenced to a term of community control sanctions. On or about January 21, 2016, Dedrick was found to be in violation of those sanctions and a capias was issued, pursuant to which Dedrick was taken into custody by the CCSD on or about May 18, 2016.

31. Dedrick was transported to and booked into the CCCC that day. At the time of his booking, Dedrick informed one or more of the Defendants, including certain of the Administrative, Medical or Corrections Defendants, that he was currently taking opiates and a benzodiazepine, Xanax, in significant doses and had been doing so prior to his arrest. Specifically, Dedrick had taken Xanax, at a dosage of 8 mg daily, for a number of months.

32. By the time Dedrick was booked into the CCCC, the Defendants had experienced several cases of inmates in the CCCC suffering serious medical problems – up to and including death – as the result of Xanax withdrawal that took place during custody and went unaddressed by adequate medical treatment. Defendants were aware that the sudden cessation of benzodiazepines

could cause serious and even fatal withdrawal symptoms, including sleep disturbances, hallucinations, vomiting, anxiety, trembling, panic attaches, the inability to concentrate, sweating, nausea, seizure and psychosis. Defendants were aware that these symptoms, in various combinations, could lead to death, as they had in the widely publicized case of Sean Lavert, who died from untreated Xanax withdrawal in the CCCC in November 2008.

33. Before May 2016, Defendants knew that inmates who were addicted to, dependent on, or had a history of abuse or use of Xanax or other benzodiazepines, had to be carefully and gradually weaned off of those drugs under medical supervision, lest they suffer the serious medical side effects of sudden withdrawal. Defendants were also aware of the symptoms of such withdrawal, the urgency with which withdrawal required treatment, and the sorts of treatment and medical intervention necessary to prevent the serious side effects of such withdrawal. CCCC has, and prior to May 2016 had had a history of inmates suffering from untreated Xanax withdrawal.

34. Prior to May 2016, the Defendants, including the Policy, Medical, and Administrative Defendants, had implemented a series of policies, procedure and protocols for the identification and treatment of inmates undergoing opioid and or benzodiazepine withdraw.

35. Upon his being booked into the CCCC, the Defendants, including the Medical, Corrections and Administrative Defendants, had actual knowledge that Dedrick was a user and abuser of Xanax, that he would not have Xanax available to him in the CCCC, or any other drug, except through their administration, and that Dedrick was therefore at serious risk of substantial medical harm as a result of Xanax withdrawal unless treated under an appropriate regime or protocol designed to prevent or ameliorate those harms.

36. Despite having such protocols for treatment in place, and despite having identified Dedrick as an inmate in need of such treatments, Defendants, including the Medical Defendants, made the conscious decision not to place Dedrick on a Xanax withdrawal treatment protocol.

37. The effects of sudden, untreated and/or medically unsupervised withdrawal from benzodiazepines present a serious risk, constitute a serious medical need, and present a substantial risk of serious harm.

38. The medical protocols and procedures at CCCC, including the protocols and procedures for treating inmates suffering from benzodiazepine withdrawal, were promulgated, created, imposed and maintained by the Entity Defendants, by and through the Policy Defendants.

39. The Entity Defendants, Tallman, and the Policy Defendants are, and at all times relevant hereto were responsible for training the Nursing and the Corrections Defendants in those policies and procedures generally, and more broadly in the proper care of inmates in the CCCC suffering from or at risk of benzodiazepine and opioid withdrawal.

40. Dedrick was at severe risk of benzodiazepine and/or opioid withdrawal when he entered the CCCC, a fact that was known to the Medical, Administrative and Corrections Defendants upon his booking, but was deliberately denied further assessment in this regard.

41. Shortly after being booked in to the CCCC, Dedrick began to suffer from withdrawal symptoms that were open, obvious and attributable to that withdrawal.

42. On his first day in custody at CCCC, May 19, 2016, Dedrick experienced and manifested symptoms including vomiting, sweating and tremors, as a result of which he asked the Corrections Defendants to allow him to be seen by a nurse. His request was summarily denied.

43. During his second day at CCCC, May 20, 2016, Dedrick began to experience additional and increased symptoms or withdrawal. He spoke to a nurse who was making the rounds in his pod to distribute medications, and requested medication to help him with his withdrawal and its symptoms. His request was denied.

44. During his third day at CCCC, May 21, 2016, Dedrick became violently ill, began slurring his words heavily, and trembling, while continuing to manifest other symptoms of

withdrawal. He made these symptoms know to the Corrections and/or Nursing Defendants, but was again refused medical treatment or a visit with a nurse.

45. On at least one occasion during his first three days at CCCC, Dedrick, aware he was going for withdrawal, directly asked one or more of the Corrections and/or Nursing Defendants if they were going to "give him something for the benzos."

46. On the morning of May 21, 2016, Dedrick suffered a seizure as a result of his untreated withdrawal from benzodiazepines and/or opioids. As a result of that seizure, he fell from a standing position and struck his head violently. Dedrick suffered a fractured skull and was bleeding profusely from his head after falling.

47. At no time prior to his seizure was Dedrick provided with drugs or other treatment to address, ameliorate or treat his withdrawal or its symptoms.

48. Dedrick was transported by Emergency Medical Services to the MetroHealth campus on West 25th street, where he was admitted and remained an inpatient for ten days.

49. For approximately two months thereafter, Dedrick participated in outpatient therapy where he had to relearn basic functions such as speaking and walking.

50. As a direct and proximate result of his untreated withdrawal, Dedrick suffered a seizure, fell, and fractured his skull resulting in bleeding on the brain, and has suffered and continues to suffer from mental, cognitive, and neurological harm, some or all of which may be permanent. He suffers physical and emotional pain and distress, loss of enjoyment of life and diminished physical capacity.

– COUNT ONE | DELIBERATE INDIFFERENCE –

51. Dedrick restates as if fully rewritten here each relevant allegation, assertion and averment set forth in Paragraphs 1 through 50 of this Complaint, above.

52. Defendants at all times had a duty to ensure that the medical needs of Dedrick would be met, and that he would not be exposed to a significant risk of substantial harm, nor suffer such harm, through the denial or lack of adequate medical attention and health care while incarcerated at CCCC.

53. The Defendants, including the Medical and Corrections Defendants, were aware that Dedrick had a recent history of benzodiazepine and opioids use and/or abuse at the time of booking, and was thus at substantial risk of significant harm unless his withdrawal from those drugs was monitored, treated and managed.

54. The Defendants, including the Medical and Corrections Defendants, were actually aware that Dedrick was going through withdrawal as early as the first day of his incarceration at CCCC, but despite this, and notwithstanding the existence of program and protocols within CCCC to monitor, manage and treat inmates in his condition, did not provide Dedrick with the medical care to which he had an Eighth Amendment right.

55. The decision to withhold and/or deny treatment by the Defendants was wanton, willful, intentional, knowing and perverse.

56. The Defendants were thus deliberately indifferent to Dedrick's significant need for medical care to treat a serious condition, in violation of his rights under the Eighth and Fourteenth Amendments, as a direct and proximate result of which Dedrick suffered, and continues to suffer from the harms outlined in Paragraphs 6 and 48 of this Complaint, above.

– COUNT TWO | DELIBERATE INDIFFERENCE BY FAILURE TO TRAIN –

57. Dedrick restates as if fully rewritten here each relevant allegation, assertion and averment set forth in Paragraphs 1 through 56 of this Complaint, above.

58. The Policy and Administrative Defendants were charged with and responsible for the promulgation of adequate procedures, policies and protocols to ensure the safety and health of

inmates at the CCCC, including policies, protocols and procedures implemented to address the significant, serious and known risks of opioid and benzodiazepine withdrawal, and did promulgate such policies, procedures and protocols for that purpose.

59. Notwithstanding this, and notwithstanding the actual promulgation and adoption of policies intended to address that risk, the Policy and Administrative Defendants failed to adequately train, supervise and discipline the Nursing, Administrative and Corrections Defendants in the proper use of, need for and urgency of those policies, procedures and protocols.

60. Given the size of the inmate population at CCCC, the prevalence of opioid and benzodiazepine abuse in society generally, among the incarcerated and particularly among those incarcerated at the CCCC, and the substantial and significant medical risks posed by untreated and unsupervised withdrawal, the deliberate failure to adequately train, supervise and discipline the Nursing, Administrative and Corrections Defendants itself created a substantial and significant risk – indeed a near certainty – that some CCCC inmates suffering from withdrawal would not receive the medical care, treatment and supervision necessary to prevent serious harm.

61. The failure to train, supervise and discipline in this way was deliberate, and reflected the official policy, practice, custom and usages of the Policy Defendants, and through them, the Entity Defendants, and constituted a deliberate indifference to the rights of those inmates at risk of serious harm from withdrawal, including Dedrick.

62. As a direct and proximate result of this failure to train, supervise and discipline, and otherwise ensure compliance with its own withdrawal policies, protocol and procedures, Dedrick suffered, and continues to suffer from the harms outlined in Paragraphs 6 and 48 of this Complaint, above.

– PRAYER –

Wherefore, having fully stated his claims against the, Dedrick demands judgment against the Defendants, and each of them, as follows:

    A.    Against each Defendant, an award of compensatory damages in an amount to be proven at trial;

    B.    Against the Policy Defendants, MetroHealth, the Administrative and Corrections Defendants, and each of them, an award of punitive and exemplary damages to be determined at trial;

    C.    Pursuant to 42 U.S.C § 1988 and Civil Rule 54 (D), an award of reasonable attorney fees and costs of suit;

    D.    Pre and post judgment interest, and;

    E.    Such other relief as the Court, in the sound exercise of its discretion, deems just.

Respectfully submitted,

/s/ Raymond V. Vasvari, Jr.

**RAYMOND V. VASVARI, JR.**
Ohio Bar No. 0055538
VASVARI & ZIMMERMAN
1301 East Ninth Street
1100 Erieview Tower
Cleveland, Ohio 44114-1844
Telephone | 216.458.5880
Email | vasvari @ vasvarilaw.com
Telecopier | 216.928.0016

/s/ Kimberly L. Lubrani

**KIMBERLY L. LUBRANI**
Ohio Bar No. 0088031
KISLING, NESTICO & REDICK, L.L.C.
3412 Market Street
Akron, Ohio 44333
Telephone | 330.869.9007
Email | klubrani @ knrlegal.com
Telecopier | 330.869.9008

Counsel for the Plaintiff, Keith Dedrick

– JURY DEMAND –

Pursuant to Civil Rule 38, Plaintiff, Keith Dedrick, hereby demands a trial by a jury comprised of the maximum number of jurors permitted by law, on each count so triable.

Respectfully submitted,

/s/ Raymond V. Vasvari, Jr.

**RAYMOND V. VASVARI, JR.**
 Ohio Bar No. 0055538
VASVARI & ZIMMERMAN
1301 East Ninth Street
1100 Erieview Tower
Cleveland, Ohio 44114-1844
Telephone | 216.458.5880
Email | vasvari @ vasvarilaw.com
Telecopier | 216.928.0016


/s/ Kimberly L. Lubrani

**KIMBERLY L. LUBRANI**
 Ohio Bar No. 0088031
KISLING, NESTICO & REDICK, L.L.C.
3412 Market Street
Akron, Ohio 44333
Telephone | 330.869.9007
Email | klubrani @ knrlegal.com
Telecopier | 330.869.9008

Counsel for the Plaintiff, Keith Dedrick